# EXHIBIT 1

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| KASEY ANDERSON, | ) |
|       Plaintiff, | ) |
| v. | ) Case No. 4:24-cv-00531-BCW |
| EQUIPMENTSHARE.COM INC., | ) |
|       Defendant. | ) |

## DECLARATION OF KRIS DUNN

I, Kris Dunn, hereby declare as follows:

1. I am over 18 years of age and am fully competent to make this statement. I have knowledge of the facts set forth herein.

2. I am Senior Director of T3 Sales at EquipmentShare.com Inc. ("EquipmentShare" or "Company").

3. EquipmentShare is a tech-enabled construction solutions provider that offers, among other things, a rental fleet with a proprietary cloud-connected technology platform, T3, that offers visibility and connectivity to jobsites.

4. I have been employed with EquipmentShare since 2017.

5. I was involved in the decision to hire Kasey Anderson into the T3 side of the Company in February 2019. I was aware she was female at the time.

6. I promoted and increased Anderson's salary multiple times. I was aware she was female at those times.

7. After promoting Anderson into the position of Manager of Customer Success, her first supervisory role within EquipmentShare, I became aware of numerous and repeated complaints from her subordinates concerning her behavior toward them, including professionalism and her communication.

1

Case 4:24-cv-00531-BCW     Document 30-1     Filed 05/16/25     Page 2 of 6

12874205v1

8. Among other concerns, employees complained, and I observed, Anderson call her reports out in group settings that they, and I, believed should be handled in private. Additionally, employees complained, and I observed, Anderson communicate to them condescendingly.

9. I spoke to Anderson multiple times concerning professionalism and communication. Field Human Resources Lead Cindy Hudson was involved in these discussions at times.

10. Despite these complaints and discussions, I did not note any improvement in Anderson's performance.

11. On or about July 27, 2023, I learned she sent a Slack message to all her reports, represented in Plaintiff's Deposition Exhibits 11, 12, and 13.

12. It was particularly troubling that Anderson indicated it was "per HR" that:

    a. "15 minute response time in slack if online and not in a meeting (Keep slack open at all times on that extra monitor you got [emoji] Or else – I see you."

    b. "When you request time-off we need a reason. Do not leave the reason blank. Do not just say 'thank you'. I will decline your request just for fun so you have to do it again."

13. Neither I nor HR approved this communication as suggested.

14. Hudson and I received multiple complaints from Anderson's subordinates that the message was unprofessional and threatening. One or more employees were concerned that she suggested HR approved the communication.

12874205v1

15. Based on Anderson's Slack message and prior issues and discussions concerning professionalism and communication, I made the decision to terminate her employment in consultation with Hudson, who I understand also conferred with her Human Resources team.

16. The termination decision was relayed to Anderson by Hudson and me on August 2, 2023.

17. At some point, I became aware of what was described to me as an "unfavorable" interaction between Jared Johanning and Cynthia Butler. I asked Butler about it and her feedback was that it was not an issue. I also reached out Johanning, who said the same thing. I am not aware of anyone cursing or the details of the situation.

18. I am not aware of Butler complaining to me about Jerry Lasley.

19. At some point, I was informed that an unidentified Product Manager believed Johanning was unkind to her during a telephone conversation. I was never provided the name of the individual or the details or circumstances. I contacted Johanning and he did not know either.

20. I am aware at some point that employee RC Davis' sister-in-law was in his reporting line but I had no authority over Davis at the time. Further, I did not believe or substantiate and have never believed or substantiated there was any nepotism from Davis toward his sister-in-law.

21. I did not make the decision to move Davis from his Director of Support role. My understanding is the decision was made because it was believed customer experience and support needed to be improved.

22. While Anderson was reporting to Jerry Lasley, she made the decision to hire his son, Gabriel Lasley, into a position on her team.

12874205v1

23. I did not believe or substantiate and have never believed or substantiated there was any nepotism from Jerry Lasley toward his son, Gabriel Lasley.

24. Inside Sales, which Lasley at one time oversaw, did "small to medium" business. It was determined this aspect of the business needed to be focused on setting meetings with prospective customers. While I believed Lasley was skilled at nurturing relationships and had leadership capacity, I did not believe this change in direction was the best fit for his skillset. Accordingly, I moved Lasley to Director of Sales Success and Customer Success.

25. I did not select Anderson for this position in 2022 because, among other reasons, at the time she had worked only a number of months overseeing employees and had limited experience.

26. Lasley started with EquipmentShare in 2016 as a Director and had decades more experience in sales and customer interaction than Anderson.

27. Lasley's employment ended February 23, 2023, when we eliminated his position entirely.

28. Jon Frazier is and was as of 2023 a Sales Manager. As of 2023, he reported to Director of Sales Jesse Johnsey. Frazier led and leads part of the T3 national sales team and is focused on the Western half of the United States. He is and was salaried and paid on a commission basis and had and has revenue targets. Frazier is involved with making sales to new customers and works with and assists sales representatives on his team to also obtain new customers. Frazier has more than 25 years of leadership and sales experience. As a Sales Manager, he worked and works in a direct revenue-driving role.

29. As of 2023 and now, Sales Engineers are focused on closing sales with prospective customers. Whereas Sales Representatives seek out leads, Sales Engineers work

with Sales Representatives to close prospective customers. Sales Engineers are generally involved in all sales meetings with prospective customers. Sales Engineers worked and work in a direct revenue-driving role.

30. Customer Success was focused on getting new customers set up in the T3 platform. Their only role in sales would typically be if an existing customer asked about adding an additional asset to the T3 platform. Generally, the only interaction Customer Success might have with a prospective customer would be after it was clear the customer would be joining, sales personnel would introduce the customer to a member of the Customer Success team as a point-of-contact after the sale. Customer Success was generally not a direct revenue-driving role.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing information is true and correct to the best of my knowledge and belief.

Executed on May 14, 2025.

*Kris Dunn*
_____
Kris Dunn